[No. 2001.]

## Camillo Gonzales *v.* The State.

Murder — Evidence — Fact Case. — Murder committed in the perpetration of robbery is *per se* murder of the first degree. See the statement of the case for evidence held, though circumstantial, sufficient to support a capital conviction for murder.

Appeal from the District Court of Kinney. Tried below before the Hon. T. M. Paschal.

The indictment in this case charged the appellant with the murder of Peter Johnson, in Kinney county, Texas, on the 1st day of November, 1884. His trial resulted in his conviction of murder in the first degree, and the death penalty was affixed.

Demetrio Hernandez was the first witness for the State. He testified that he lived on Mud creek, in Kinney county, Texas. Ed. Dignowitty owned a store which was situated on that creek, near the witness's house. The store was under the charge of Peter Johnson, the deceased. On Sunday morning, about the 1st of November, 1884, witness went to Dignowitty's store for the purpose of purchasing some goods. Witness found the front door of the store open, and the deceased lying on the floor, quite dead, his head near the door and in a pool of blood. The body lay partly on the right

side and face, the hands being securely tied behind the back. Witness, much frightened, left the store and went directly to the house of Willis Randers, justice of the peace, and reported to that gentleman the discovery he had made. Mr. Randers, witness and another man repaired to Dignowitty's store, and examined the dead body of Peter Johnson. It lay just as witness found it, and just as he left it when he started to Randers's house. A bullet had penetrated the head above the right eye. The goods in the store were greatly disordered, and showed plainly that robbery had been committed. The safe door was open, and the floor in front of it was covered with papers. The witness had been about the store a great deal during several months preceding the murder, and was comparatively familiar with the goods kept for sale. Witness missed immediately a number of articles kept in stock, and among them a pile of blankets, some clothing, and two pair of boots which had been habitually kept suspended as samples from the rafter between the counters. The boots mentioned were heavy articles of unusually large size, one pair being of the pattern known as the " O. K." boot. The letters " O. K." were formed on the sole by an arrangement of large-headed tacks. Witness's attention had been frequently attracted to those boots because of the conspicuous place in which they were hung, and because of their extraordinary size. He missed them as soon as he got inside of the store.

After the witness and the gentlemen who were with him had examined the body of the deceased, and the interior of the store, they went outside to see if they could discover any clues to the perpetrators of the murder. They found the tracks of three horses leading off from the store in a northeasterly direction. A slight rain fell before they were made, and rendered the tracks easily followed. One track was the track of a horse with one split hoof, which made an impression similar to that of a cow's hoof. Another was the track of a horse shod on three feet, and the other was the track of a colt or mule. Randers and witness followed the trail northeast and then northwest until it crossed the railroad track, about three miles from the store, when they returned to the store. Mr. Randers then sent for Mr. Dignowitty, who came and took charge of the body. A new coat was found on the ground at the point where the assassins mounted their horses. The trail of the three horses, after crossing the railroad track, led towards the Rio Grande in the direction of the mouth of the Pinto. This assassination occurred in Kinney county, Texas, on or about November 1, 1884. Witness was enabled to approximate the date from the fact that he found the body but a few days before the presidential election of that year.

Willis Randers testified, for the State, that in November, 1884, he lived on Mud creek, and was a justice of the peace for Kinney county. His house was situated near Dignowitty's store. Early on the 2d day of November, one Demetrio Hernandez came to witness's house and informed him that the store of Mr. Ed. Dignowitty had been robbed, and the manager, Mr. Peter Johnson, murdered. Witness went to the store immediately and found the dead body of Mr. Johnson lying on the floor. The store had been sacked. Witness placed a guard about the store-house to prevent the obliteration of the trail, and to keep visitors out of the store. The body, which lay partly with the face and partly with the side down, was then turned over by order of the witness. A large bullet hole was found just above the right eye. The ball ranged backwards through the head, and lodged under the scalp, and most unquestionably caused death. The store had most evidently been robbed of a considerable amount of goods. The safe had been opened, and books and papers were scattered about on the floor. Witness immediately sent word to Mr. Dignowitty. Witness was a frequent visitor to Dignowitty's store and was quite intimate with Mr. Johnson in his life-time. He also knew the premises well, and had a very good general idea about the goods kept in stock. Witness was in the store on each of the two days preceding the murder, and found Mr. Johnson attending to his business as usual. Witness missed from the store, on the morning that he found Johnson's dead body, several carbines, two pair of boots that had been kept suspended from the ceiling, some silver-gray blankets that had been kept piled on the counter, a lot of clothing, some cashmere and some ducking goods. The witness missed the boots instantly on stepping into the store. He had seen them as recently as the day before, and had recently joked Mr. Johnson for carrying them as dead stock, because they were so extraordinarily large in size. Witness examined the interior of the store first, and then went outside with two other gentlemen to search for traces of the perpetrators of the murder and robbery. Witness soon found a new coat on the ground at a point where three horses had been mounted and ridden off in full speed. The ground was soft and the trail easily followed. The tracks showed that one of the horses had a split hoof, that another was shod on three feet, the right fore foot being bare, and that the other was a small or young horse with a foot like that of a mule. Witness and two others followed this trail about three miles towards the railroad. Being on foot, they turned back after going that distance. The trail, from where they abandoned it, led towards the Rio Grande. Witness on

his return to the store found that Mr. Dignowitty had arrived, and he turned the premises over to him. Witness and a party resumed the pursuit on that evening, and followed the trail to the Rio Grande. The trail struck the Rio Grande near the mouth of the Pinto. The tracks of all three of the horses went into the river, but the track of the horse with the shoe off, and the track of the small horse, returned, and were trailed by the witness and his party up the bank, after which the party returned home. The track of the horse with the split hoof was never seen again after it entered the Rio Grande.

Ed. Dignowitty was the next witness for the State. He testified that, in October and November, 1884, he owned what was known as Dignowitty's store, in Mud Creek, in Kinney county, Texas. That establishment was managed for him by Peter Johnson, who was killed on or about the first Sunday morning in November, 1884. On that morning the witness received a message from Justice of the Peace Randers to the effect that his store had been robbed, and Mr. Johnson murdered. Witness went to his store immediately and found the dead body of Mr. Johnson, with a large-sized gun-shot wound over the right eye. Johnson's hands were tied behind him, which had evidently been done before the fatal shot was fired. The ball passed entirely through the brain, and lodged under the scalp at the back of the head. The goods in the store were in utmost confusion, those not taken having been torn from the shelves and more or less damaged. The safe had been forced open and witness's papers and books scattered over the floor. Witness missed a lot of silver-gray blankets that had borders of yellow and red; several Kennedy carbines, some clothing of different styles, and two pair of boots so large that they could not be sold. Witness trailed the horse tracks as described by Randers to the Rio Grande. Some eight or ten days after the murder and robbery, the defendant was arrested in Del Rio, and was arraigned before a justice of the peace, on a charge of horse theft. Witness saw the defendant in court and noticed that he was then wearing a pair of "O. K." boots so much too large for him that he was wearing the right boot on the left foot, and the left boot on the right foot.

Tomas Garza was the next witness for the State. He testified that he lived in Del Rio, Kinney county, during the fall of 1884. On Friday night, near the 1st of November of that year, a bay mare and two other horses were stolen from the witness's corral in Del Rio. Witness struck the trail on Saturday morning and followed it as it circled around town to a point above town, whence it led in the direction of the mouth of the Pinto on the Rio Grande.

Witness followed the trail to a point near Dignowitty's store on Mud. creek, where he lost it. Witness then went to Brackett and informed the authorities of his loss, and returned to the point near Dignowitty's store where he had lost the trail, and ascertained that the trail had been re-discovered. Witness struck the trail again where the track of his mare came out of the river, whence he followed it in the direction of the mouth of the Pinto to a point whence it turned again towards Del Rio. While following the trail witness met Marcus Evarra and Miguel Galindo, who informed him that they had met the defendant riding witness's mare, which they knew well, and that the mare, when they saw defendant, was about ridden down. Witness's mare had on but three shoes, which fact, and the peculiarity of the tracks of the other two horses, enabled him to follow the trail readily. Mr. Schrier some days later informed the witness where on the range he could find his mare. Witness found and recovered her and had the defendant arrested for stealing her.

W. R. Schrier testified, for the State, that he lived in Del Rio, Kinney county, Texas, in November, 1884. *En route* from Brackett to Del Rio on Sunday, November 2, 1884, and just before he reached the Pinto, the witness stopped in the bed of a small creek to water his horse and repair his harness, which in one place was slightly out of order. While at this point the witness noticed a man on a hill some fifty or sixty yards off, and a little to the left of the road. The man was engaged in removing the saddle from a horse. His unusual movements attracted the witness's attention. Having taken the saddle and bridle from the horse he arranged them in a bundle and threw them across his back. Witness drove up near him, when the man approached and asked the witness the road to the Camposes ranche. Witness replied that the Camposes ranche road was about seventy-five yards back. The man appeared to the witness to be very uneasy. He kept glancing back behind him, but kept the witness well in view. He had a new carbine in his hand. He had on a new gray coat. He carried a large bundle on his back, his arms being thrust through the bundle. The bundle appeared to be made of two new blankets with red and yellow borders, and was too large to contain only a saddle. The man left, going in the direction of the Camposes ranche, as soon as the witness gave him directions. His manner was so uneasy and his movements so suspicious that the witness drove out to the point where he had left the horse. Witness then found that the animal, which the man had told him he abandoned because " given out," to be a bay mare which belonged to

Mr. Tomas Garza. She was completely broken down, and showed unmistakable signs of a long and exhaustive ride. Her sides were swollen and bloody from the impressions of a spur. Her legs were swollen and her ears drooped. She wore but three shoes. Witness made this accurate examination of the mare because the conduct of the defendant, who was undoubtedly the man he has described, excited his suspicions. On reaching Del Rio witness told Mr. Garza where he saw the mare, some fourteen miles from Dignowitty's store.

Marcus Evarra testified, for the State, that, on Sunday, about November 1, 1884, he, in company with Miguel Galindo, then *en route* from Del Rio to Carter's ranche, on the Pinto, met the defendant riding a bay mare that belonged to Tomas Garza. The animal was very nearly given out. Defendant had a new gun, and a large bundle in blankets, behind his saddle. Witness had frequently seen the defendant before, and knew him to be the man now on trial. Witness subsequently told Garza that he saw defendant with his mare. Miguel Galindo's testimony was substantially to the same effect.

Constable J. Thompson testified that, with a warrant for defendant's arrest for stealing the horses of Tomas Garza, he went to defendant's house about November 7 or 8, 1884. He saw defendant leave before he got to the house, but went on to the house and asked for him. After some delay witness was told that defendant was not at home. Witness afterwards arrested defendant, and was told by him that he had left town because of something in connection with the election.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. This appeal is from a conviction of murder of the first degree, to which the death penalty has been affixed as the punishment.

There is but a single bill of exceptions in the record, and that is saved to the action of the court in overruling the motion for a new trial, in which two grounds for the motion are stated. 1. That the verdict is contrary to the law and the evidence. 2. That the evidence adduced on the trial did not show that the murder had been committed with express malice.

It is shown by the evidence that Johnson, the deceased, was found lying dead upon the floor of the house in which he was keeping a store for one Dignowitty, early on a Sunday morning, about the 1st of November, 1884. His hands were tied behind his back, and there was a bullet hole through his head. He had evidently been killed some hours previously, and the store-house had been robbed of a number of articles, including some silver-grey blankets with red and yellow borders, several carbines or rifles, and an extra large-sized pair of O. K. boots. On the same Sunday morning one of the witnesses saw defendant fourteen miles from the scene of the murder, turning loose on the prairie the animal which he had been riding, and which was completely broken down from hard riding. The witness saw defendant go off from where he abandoned the horse with a large bundle upon his back, the bundle being made out of two new blankets with red and yellow borders. Defendant was arrested for the theft of the horse, which he had stolen and ridden, and at his examining trial for this latter offense he was wearing a pair of O. K. boots so much too large for him that he was wearing the right on the left foot and the left on the right.

The evidence is wholly circumstantial, but many other circumstances are detailed, in addition to those stated, which point, as a whole, with the unerring certainty of fate to this appellant as one, if not the sole, perpetrator of the horrible crime. It was a murder committed in the perpetration of robbery. The murder was evidently committed after deceased had been rendered powerless — his hands having been tied behind his back — and yet it is claimed there is no evidence of express malice. Murder in the perpetration of robbery is *per se* murder of the first degree (Penal Code, art. 606); and a murder so committed fully evidences express malice. (*Sharpe* v. *The State*, 17 Texas Ct. App., 487; *Mitchell* v. *The State*, 1 Texas Ct. App., 195; *Roach* v. *The State*, 8 Texas Ct. App., 479.) Circumstances of enormity, cruelty, deliberate malignity, and cool, calculating compassings, when attending a homicide, oftentimes furnish most satisfactory as well as sufficient evidence to establish the inference that the killing was upon express malice. (*McCoy* v. *The State*, 25 Texas, 33.)

In our opinion, the evidence is most conclusive of defendant's guilt. If guilty at all, and of that we have no doubt, he can be guilty of no less an offense than guilty of murder of the first degree,— a murder unrelieved by a single palliating circumstance, and aggravated by the fact that it was committed solely for purposes of robbery. Appellant has forfeited his life, in the opinion of a jury

of his countrymen, by his own inhuman conduct, and we see no reason, his trial having been fair and impartial, why the demand of the law should be interfered with.

The judgment is in all things affirmed.

*Affirmed.*

[Opinion delivered November 18, 1885.]